# Exhibit 2

STATE OF NEW YORK
SUPREME COURT:  COUNTY OF ERIE

_____

JOHN CLYDE,

                Plaintiff,

vs.

CITY OF BUFFALO, and
POLICE OFFICER
NATHANIEL L. RODRIGUEZ

                Defendants.

_____

**COMPLAINT**

Index No.

Plaintiff, JOHN CLYDE, ("Plaintiff") by his attorneys, LIPSITZ GREEN SCIME CAMBRIA LLP, for his complaint against Defendants, alleges:

## PARTIES

1. Plaintiff, at all times hereinafter mentioned was and still is a resident of the City of Niagara Falls located within the County of Niagara and the State of New York.

2. Upon information and belief, Defendant CITY OF BUFFALO (the "City") is a municipal corporation duly organized and existing under and pursuant to the laws of the State of New York.

3. At all relevant times, the Buffalo Police Department ("BPD") was a department, agency, and/or administrative subdivision of the City.

4. Upon information and belief, at all relevant times, Defendant Police Officer Nathaniel L. Rodriguez was employed as a police officer by the City and/or BPD.

5. At all relevant times, Defendant Rodriguez acted under color of state law and within the scope of his employment, authority, and duties as a police officer for the City and/or BPD.

1 of 14

6.      At all relevant times, the City was responsible for the policies, customs, practices, training, supervision, discipline, investigation, and conduct of BPD officers, including Defendant Rodriguez.

## CONDITION PRECEDENT

7.      On or about April 23, 2025, a Notice of Claim was served on behalf of Plaintiff upon the City of Buffalo and John and/or Jane Doe, said police officer and/or police department employee on duty involved in the incident on March 9, 2025, within ninety (90) days of the date upon which the claim arose. At least thirty (30) days have elapsed since service of the Notice of Claim, and the City has failed and neglected to adjust or pay the claim.

8.      On or about April 23, 2025, a Notice of Claim was served on behalf of Plaintiff upon the City of Buffalo and John and/or Jane Doe, said police officer and/or police department employee on duty involved in the March 9, 2025 incident, within ninety (90) days of the date upon which the claim arose. At least thirty (30) days have elapsed since service of the Notice of Claim, and the City has failed and neglected to adjust or pay the claim.

9.      Defendants conducted a New York General Municipal Law § 50-h examination of Plaintiff on July 17, 2025.

10.     This action is timely commenced and all conditions precedent to suit have been satisfied, waived, or otherwise excused.

## FACTS

11.     On March 9, 2025, at approximately 3:32 a.m., Plaintiff was outside VENU, located at or near 75 West Chippewa Street in Buffalo, New York, and in the vicinity of 67 West Chippewa Street.

12.     At or about that time, BPD officers responded to a fight or altercation in the area.

-2-

13. Shortly before the police contact described below, Plaintiff had been involved in a brief physical altercation outside VENU.

14. That altercation had ended before Defendant Rodriguez used force against Plaintiff.

15. After the altercation ended, Plaintiff moved away from the altercation, crossed the street and/or proceeded onto the sidewalk in the vicinity of West Chippewa Street, and was walking away from the prior altercation.

16. At that time, Plaintiff was not under arrest, was not handcuffed, had not been charged with any offense, had not been issued an appearance ticket, was not attempting to flee from any lawful arrest, and was not attempting to reengage in the prior altercation.

17. Upon information and belief, at the time Defendant Rodriguez used force against Plaintiff, Plaintiff did not pose an immediate threat to Defendant Rodriguez, other officers, or others sufficient to justify the force used.

18. Upon information and belief, including witness account, Defendant Rodriguez rapidly rushed and/or charged toward Plaintiff during the police response.

19. Defendant Rodriguez intentionally applied physical force to Plaintiff for the purpose of stopping, restraining, controlling, and/or redirecting Plaintiff's movement.

20. Defendant Rodriguez intentionally struck, shoved, body-checked, collided with, and/or otherwise made forceful physical contact with Plaintiff.

21. The force used by Defendant Rodriguez caused Plaintiff to fall and forcefully strike his head on the concrete.

22. Plaintiff lost consciousness and was unconscious and bleeding in the immediate aftermath.

23. The aftermath of the collision caused a significant public scene, with Plaintiff lying injured and unconscious while bystanders and/or companions reacted to his condition.

24. Upon information and belief, BPD policies and/or practices required officers to activate body-worn cameras during law-enforcement activity, including responses to calls for service, investigatory encounters, enforcement encounters, and/or uses of force.

25. Upon information and belief, Defendant Rodriguez failed to activate, maintain, and/or preserve body-worn-camera footage capturing the force described herein.

26. Upon information and belief, any failure by Defendant Rodriguez to record and/or preserve the use of force was contrary to BPD body-worn-camera requirements and reflected deficient training, supervision, auditing, investigation, and discipline regarding those requirements.

27. Plaintiff was transported by ambulance to Erie County Medical Center for emergency medical treatment.

28. As a direct and proximate result of Defendant Rodriguez's use of force, Plaintiff sustained serious injuries, including traumatic head injury, traumatic brain injury, subarachnoid hemorrhage, right tentorial subdural hemorrhage and/or possible right tentorial subdural hemorrhage, left parietal scalp contusion, swelling and/or hematoma, facial and lip abrasions and lacerations, arm and elbow abrasions, headaches, dizziness, loss of consciousness, amnesia, and other injuries.

29. Plaintiff required emergency evaluation, CT imaging, neurosurgical consultation, anti-seizure medication, seizure precautions, observation, repeat CT imaging, and neurosurgical follow-up.

-4-

30.     Plaintiff continued to experience headaches, dizziness, pain, and other symptoms after the incident.

31.     Plaintiff also sustained medical expenses, out-of-pocket expenses, lost wages, loss of enjoyment of life, physical pain and suffering, emotional distress, and other damages.

32.     This action falls within one or more of the exceptions set forth in CPLR § 1602.

## FIRST CAUSE OF ACTION

42 U.S.C. § 1983 – EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT

(Against Defendant Rodriguez)

33.     Plaintiff repeats, reiterates, and realleges each and every allegation contained above with the same force and effect as if fully set forth herein.

34.     On March 9, 2025, Defendant Rodriguez, acting under color of state law, applied physical force to Plaintiff with the intent to stop, restrain, control, and/or redirect Plaintiff's movement, thereby seizing Plaintiff within the meaning of the Fourth Amendment.

35.     Defendant Rodriguez violated Plaintiff's right to be free from unreasonable seizure and excessive force under the Fourth Amendment to the United States Constitution when he rushed, charged, struck, shoved, body-checked, collided with, and/or otherwise made forceful physical contact with Plaintiff.

36.     The force used by Defendant Rodriguez was objectively unreasonable under the totality of the circumstances.

37.     Plaintiff was not under arrest, was not handcuffed, had not been charged, was not fleeing a lawful arrest, was not attempting to reengage in the prior altercation, and did not pose an immediate threat sufficient to justify the force used by Defendant Rodriguez.

-5-

38.    The circumstances did not justify Defendant Rodriguez's rapid rush, charge, collision, shove, strike, body-check, or other forceful contact with Plaintiff.

39.    Defendant Rodriguez's conduct was a direct and proximate cause of Plaintiff's injuries and damages.

40.    The constitutional rights violated by Defendant Rodriguez were clearly established, and no reasonable officer in Defendant Rodriguez's position could have believed that the force used was lawful under the circumstances.

41.    Defendant Rodriguez's conduct was intentional, reckless, malicious, wanton, and/or undertaken with conscious disregard for Plaintiff's rights and safety, entitling Plaintiff to punitive damages against Defendant Rodriguez.

42.    Plaintiff was required to hire attorneys to represent him in this matter and is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

43.    At no point during the incidents described herein did the circumstances necessitate or support the above applications of force utilized by the defendants against plaintiff.

44.    As a result of Defendant Rodriguez's unconstitutional use of force, Plaintiff was damaged, harmed and injured and seeks compensation in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### ASSAULT UNDER NEW YORK LAW

(Against Defendant Rodriguez, with State-Law Vicarious Liability Against the City)

45.    Plaintiff repeats, reiterates, and realleges each and every allegation contained above with the same force and effect as if fully set forth herein.

46.    Defendant Rodriguez intentionally rushed, charged, struck, shoved, body-checked, collided with, and/or otherwise made forceful physical contact with Plaintiff.

-6-

47. Defendant Rodriguez intended to cause harmful or offensive bodily contact with Plaintiff and/or intended to place Plaintiff in imminent apprehension of harmful or offensive bodily contact.

48. Upon information and belief, Defendant Rodriguez's rapid rush, charge, and forceful approach placed Plaintiff in imminent apprehension of harmful or offensive bodily contact immediately before the collision and head strike, notwithstanding Plaintiff's subsequent loss of consciousness and traumatic amnesia concerning portions of the event.

49. Defendant Rodriguez's actions were not justified, privileged, consented to, or otherwise lawful.

50. At all relevant times, Defendant Rodriguez was acting within the scope of his employment with the City and/or BPD, rendering the City vicariously liable for state-law torts committed by Defendant Rodriguez.

51. As a direct and proximate result of the foregoing, Plaintiff sustained economic and noneconomic damages, including physical pain and suffering, medical expenses, lost wages, emotional distress, loss of enjoyment of life, and other damages.

52. Defendant Rodriguez's conduct was intentional, malicious, wanton, reckless, and/or undertaken with conscious disregard for Plaintiff's rights and safety, entitling Plaintiff to punitive damages against Defendant Rodriguez.

### THIRD CAUSE OF ACTION
BATTERY UNDER NEW YORK LAW
(Against Defendant Rodriguez, with State-Law Vicarious Liability Against the City)

53. Plaintiff repeats, reiterates, and realleges each and every allegation contained above with the same force and effect as if fully set forth herein.

-7-

54.    Defendant Rodriguez intentionally made harmful and/or offensive bodily contact with Plaintiff when he rushed, charged, struck, shoved, body-checked, collided with, and/or otherwise made forceful physical contact with Plaintiff.

55.    The bodily contact was without Plaintiff's consent and was not justified, privileged, or otherwise lawful.

56.    At all relevant times, Defendant Rodriguez was acting within the scope of his employment with the City and/or BPD, rendering the City vicariously liable for state-law torts committed by Defendant Rodriguez.

57.    As a direct and proximate result of the foregoing, Plaintiff sustained economic and noneconomic damages, including physical pain and suffering, medical expenses, lost wages, emotional distress, loss of enjoyment of life, and other damages.

58.    Defendant Rodriguez's conduct was intentional, malicious, wanton, reckless, and/or undertaken with conscious disregard for Plaintiff's rights and safety, entitling Plaintiff to punitive damages against Defendant Rodriguez.

**FOURTH CAUSE OF ACTION**
42 U.S.C. § 1983 – *MONELL* MUNICIPAL LIABILITY
(Against Defendant City of Buffalo)

59.    Plaintiff repeats, reiterates, and realleges each and every allegation contained above with the same force and effect as if fully set forth herein.

60.    A municipality may be held liable under 42 U.S.C. § 1983 when an official policy, custom, practice, or municipal omission causes the deprivation of constitutional rights.

61.    At all relevant times, the City, through BPD and City policymakers, was responsible for the training, supervision, discipline, investigation, correction, and control of BPD

-8-

officers, including officers responding to street-level encounters, fight calls, crowd-control situations, and non-arrest public encounters.

62.     Before March 9, 2025, the City had notice through lawsuits, notices of claim, public reports, judicial proceedings, community complaints, internal materials, official law-enforcement misconduct proceedings, publicly filed expert analysis, and other sources that BPD had recurring deficiencies in its systems for investigating, supervising, disciplining, training, and correcting officer misconduct.

63.     Before March 9, 2025, the City knew or should have known that BPD officers required adequate training, supervision, discipline, and corrective action concerning de-escalation, avoidance of unnecessary escalation, appropriate use of distance and time, proper evaluation of rapidly evolving scenes, and objectively reasonable force.

64.     Before March 9, 2025, official state law-enforcement misconduct proceedings concerning BPD officers had identified repeated Fourth Amendment violations, unnecessary escalation, excessive force, retaliation, and the need for additional BPD supervision, training, monitoring, and corrective action regarding use of force, de-escalation, stops, and constitutional policing.

65.     Before March 9, 2025, pending civil-rights litigation, public records, notices of claim, lawsuits, judicial proceedings, public reports, publicly filed expert analysis, and BPD internal materials further placed the City on notice that BPD's internal accountability system failed to meaningfully identify, investigate, discipline, retrain, supervise, and correct officer misconduct.

66.     Upon information and belief, BPD's written policies recognized the importance of de-escalation, avoiding tactics that unnecessarily create the need for force, maintaining

-9-

appropriate time and distance, and using force only when objectively reasonable, but the City failed to adequately implement, train, supervise, audit, discipline, and enforce those requirements.

67.     Upon information and belief, BPD's written policies and/or training materials also required officers to activate body-worn cameras during law-enforcement activity, including responses to calls for service, investigatory encounters, enforcement encounters, and/or uses of force, but the City failed to adequately train, supervise, audit, investigate, and discipline officers for failing to comply with those requirements.

68.     Upon information and belief, BPD's internal-affairs and supervisory practices failed to ensure that allegations and evidence of officer misconduct were meaningfully investigated from all available sources, including notices of claim, civil lawsuits, judicial determinations, public complaints, media reports, body-worn-camera footage, City camera footage, civilian video, and other available evidence.

69.     Upon information and belief, BPD failed to maintain or use effective early-intervention, internal-auditing, video-review, performance-evaluation, and supervisory-review systems capable of identifying officers whose conduct involved excessive force, unnecessary escalation, unlawful stops, discourtesy, failure to document required events, or other unconstitutional or unreasonable conduct.

70.     Upon information and belief, BPD's complaint and misconduct-investigation practices failed to ensure adequate scoping of allegations, adequate collection and review of available video, adequate witness interviews, adequate officer interviews, adequate consideration of prior complaints or officer history, adequate written analysis, and evidence-based findings.

-10-

71. Upon information and belief, BPD's practice of resolving officer-conduct issues through undocumented or inadequately documented informal conferences, non-disciplinary dispositions, or no corrective action failed to provide meaningful discipline, retraining, supervision, follow-up, or deterrence, and allowed unconstitutional conduct to go undetected and uncorrected.

72. Upon information and belief, the City's policymakers knew or should have known of these customs, practices, and omissions and acquiesced in them by failing to take meaningful corrective action despite repeated notice that BPD's accountability, supervision, discipline, training, investigation, video-review, and early-intervention systems were inadequate.

73. Upon information and belief, these municipal customs, practices, and omissions were not isolated administrative shortcomings, but longstanding and known deficiencies in BPD's system for detecting, correcting, and preventing unconstitutional street-level policing.

74. The City maintained customs, practices, and omissions amounting to deliberate indifference to the rights of persons encountered by BPD officers, including the failure to adequately train and supervise officers in de-escalation, avoidance of unnecessary escalation, and use of objectively reasonable force during fight calls, bar-district disturbances, crowd-control responses, street-level encounters, and non-arrest interactions.

75. The City further failed to train and supervise officers responding to fight calls, bar-district disturbances, crowd-control scenes, and non-arrest street encounters regarding when physical contact, body-checking, rushing, charging, striking, shoving, or other force against a member of the public is constitutionally permissible.

-11-

76.     The City further failed to use allegations and evidence of officer misconduct from available sources to identify patterns, repeat officers, supervision failures, training deficiencies, policy violations, and the need for corrective action.

77.     The City further failed to maintain and use effective body-worn-camera activation requirements, body-worn-camera review, video auditing, supervisory review, early intervention, performance evaluation, retraining, and discipline systems to identify officers who engaged in unreasonable force, unnecessary escalation, failure to record required events, discourtesy, unlawful stops, or other unconstitutional conduct.

78.     The City further failed to ensure meaningful discipline, retraining, corrective action, and supervision after incidents suggesting officer misconduct, thereby allowing unconstitutional and unreasonable conduct to go undetected, uncorrected, and undeterred.

79.     The City further failed to ensure that officers who failed to activate, maintain, or preserve body-worn-camera footage during required events were identified, investigated, retrained, disciplined, or otherwise corrected.

80.     The City's customs, practices, and omissions created an environment in which officers could engage in unreasonable force and unnecessary escalation during street-level encounters with little risk of meaningful detection, correction, discipline, retraining, or supervision.

81.     Upon information and belief, Defendant Rodriguez's failure to record and/or preserve body-worn-camera footage capturing the force described herein was consistent with the City's deficient body-worn-camera training, supervision, review, auditing, investigation, and discipline practices.

82. The City's deliberate indifference was a moving force behind Defendant Rodriguez's unconstitutional use of force against Plaintiff because the City's deficient training, supervision, discipline, investigation, early-intervention, and corrective-action practices made it foreseeable that officers responding to chaotic street-level encounters, fight calls, and crowd-control scenes would unnecessarily escalate encounters and use unreasonable force without meaningful risk of detection, discipline, retraining, supervision, or correction.

83. As a direct and proximate result of the City's policies, customs, practices, and omissions, Plaintiff suffered violations of his constitutional rights, physical injuries, emotional distress, medical expenses, lost wages, loss of enjoyment of life, and other damages.

84. Plaintiff was required to hire attorneys to represent him in this matter and is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Compensatory damages, special damages, and all other legally recoverable damages in an amount to be determined at trial;

B. Reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988;

C. Punitive damages against Defendant Rodriguez only;

D. Prejudgment and post-judgment interest to the extent permitted by law; and

E. Such other, further, and different relief as this Court deems just and proper.

-13-

Case 1:26-cv-01447-EAW     Document 1-3     Filed 07/16/26     Page 15 of 15

DATED: Buffalo, New York
    June 4, 2026

         LIPSITZ GREEN SCIME CAMBRIA LLP

         By:  */s/ Robert M. Corp*
         ROBERT M. CORP, ESQ.
         Attorneys for Plaintiff
         42 Delaware Avenue, Suite 120
         Buffalo, New York 14202-3924
         (716) 849-1333

-14-